2014 IL App (1st) 123436

No. 1-12-3436

Fifth Division
July 18, 2014

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| SHARON KIMBLE, | ) | |
| | ) | |
| | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court |
| | ) | of Cook County. |
| v. | ) | |
| | ) | No. 10 CH 28423 |
| THE ILLINOIS STATE BOARD OF EDUCATION; | ) | |
| VICKI PETERSON COHEN, Hearing Officer; THE | ) | The Honorable |
| BOARD OF EDUCATION OF THE CITY OF | ) | LeRoy Martin, Jr., |
| CHICAGO; and BARBARA BYRD-BENNETT, Chief | ) | Judge Presiding. |
| Executive Officer, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

PRESIDING JUSTICE GORDON delivered the judgment of the court, with opinion.
Justices McBride and Palmer concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff Sharon Kimble, a tenured teacher assigned to teach at Parkside Academy (Parkside), was dismissed from her employment by the defendant board of education of the City of Chicago[1] (the Board) after over 20 years of service based on allegations that she pushed and choked a 10-year-old student. At the time of its alleged occurrence, the incident was reported to

---

[1] While plaintiff's notice of appeal lists Ron Huberman as the chief executive officer (CEO) of the Board, Huberman no longer holds that position. Accordingly, pursuant to section 2-1008(d) of the Code of Civil Procedure (735 ILCS 5/2-1008(d) (West 2012)), we have amended the caption to correctly reflect the current CEO. On this court's own motion, we hereby substitute her as a party as shown above.

the Department of Children and Family Services (DCFS), which determined that the allegations of abuse were unfounded. However, the Board approved dismissal charges against plaintiff based on alleged violations of the Chicago Public Schools' employee discipline and due process policy, which prohibited the use of corporal punishment.

¶ 2     At her tenured-teacher dismissal hearing before an Illinois State Board of Education (ISBE) appointed hearing officer, defendant Vicki Peterson Cohen, plaintiff did not dispute that, on the day in question, (1) she told the student that he could not attend gym class because he failed to complete an assignment, (2) he nonetheless lined up with the other students for gym and refused to leave the line, and (3) she removed him from the line and took him to the counselor's office. However, she disputed the claim that she grabbed him by the neck and pushed him into the counselor's office and also denied choking him, which was a separate incident that allegedly occurred several days later. The student who was allegedly abused was absent from the hearing, and his statements were testified to by the school counselor and principal, as well as by a Board investigator. The hearing officer recommended that plaintiff's employment be terminated, and the Board adopted the hearing officer's recommendation and terminated plaintiff's employment.

¶ 3     On administrative review before the trial court, the trial court reversed in part and remanded for further findings of fact, explaining that the record contained inadmissible hearsay and prior incidents evidence, and the factual basis of the hearing officer's recommendation was not apparent from the record. On remand, the hearing officer issued a clarification, and the Board issued a supplemental order on remand, affirming plaintiff's employment termination. On further administrative review, the trial court affirmed.

¶ 4     On appeal, plaintiff argues that (1) the termination proceedings denied her due process; (2) the Board failed to follow the trial court's directions on remand; and (3) the hearing officer's

and the Board's findings of fact and conclusions of law were contrary to law and against the manifest weight of the evidence. For the reasons that follow, we reverse.

¶ 5                                   BACKGROUND

¶ 6                              I. Dismissal Charges

¶ 7        On February 3, 2009, the Board approved nine dismissal charges against plaintiff, a tenured teacher assigned to Parkside who had been employed with the Board for over 20 years. Plaintiff was charged with: (1) violating section 3-17 of the Chicago Public Schools' employee discipline and due process policy (the CPS policy), which "prohibits violating School rules, Board rules, policies or procedures that result in behaviors that disrupt the orderly educational process in the classroom, in the school, and may occur on or off school grounds or assigned work location"; (2) violating section 4-1 of the CPS policy, which "prohibits repeated or flagrant acts of Group 3 misconduct"; (3) violating section 4-3 of the CPS policy, which "prohibits assaulting, threatening, intimidating, or physical or verbal abuse, by any employee against any person on school grounds which results in physical contact; or provoking or inciting another person to engage in such conduct"; (4) violating section 4-16 of the CPS policy, which "prohibits retaliating against an employee or student"; (5) violating section 4-25 of the CPS policy, which "prohibits using corporal punishment that results in the deliberate use of physical force with a student (e.g., slapping, hitting, pushing, shaking, twisting, pinching, choking, swatting, head banging, or other physical contact; using any type of object or instrument that has contact with a student)"; (6) violating section 4-26 of the CPS policy, which "prohibits violating School rules, Board rules, policies or procedures that result in behaviors that seriously disrupt the orderly educational process in the classroom, in the school, and may occur on or off the school grounds or assigned work location"; (7) violating section 5-1 of the CPS policy, which "prohibits

3

repeated or flagrant acts of Group 4 misconduct"; (8) violating section 5-17 of the CPS policy, which "prohibits violating School rules, or Board rules, policies or procedures that result in behaviors that grossly disrupt the orderly educational process in the classroom, in the school, and may occur on or off school grounds or assigned work location"; and (9) "conduct *** unbecoming an employee of the Chicago Public Schools."

¶ 8    The dismissal charges were supported by nine specifications:

"1. At all relevant times to these charges, you were assigned as a teacher at Parkside Elementary School.

2. You have been disciplined and warned in the past regarding your use of corporal punishment, and other issues of misconduct.

3. On or about October 28, 2008, you grabbed J.W., a male student, age 10, by the neck and as you led him into a classroom his eye hit the edge of the wooden border on the wall causing injury.

4. On or about October 28, 2008, you grabbed J.W. by the neck again, and pushed him into a room.

5. On or about October 30, 2008, you grabbed J.W. by the front of his shirt and choked him.

6. J.W. notified the school administration about your physical abuse of him.

7. The school administration contacted the Illinois Department of Children and Family Services ('DCFS'), as required by Illinois law.

8. On or about November 6, 2008, a DCFS investigator interviewed you about the allegations set forth in paragraph two through four above.

9. Shortly after being interviewed by the DCFS investigator, on or about November 6, 2008, you retaliated against J.S. [*sic*] by inciting the students in J.W.'s class to scream at him and ridicule him, among other things."

The form approving the dismissal charges concluded: "Based on the above specifications, dismissal is warranted due to your irremediable conduct."

¶ 9                                  II. Dismissal Hearing

¶ 10       On September 14 and 16 and December 14 and 15, 2009, the parties came before a hearing officer for plaintiff's dismissal hearing. The Board's CEO presented four witnesses: Kenneth Wiggins, an investigator for the Board's law office; Sarah Barber, a consultant with CPS and former assistant principal at Parkside; Cari Rohe, a counselor at Parkside; and Dorothy Thompson, the principal at Parkside. Plaintiff presented six witnesses: plaintiff; D.W., a 10-year-old former student of plaintiff's; Jennifer Figueroa, plaintiff's daughter and a former counseling intern at Parkside; Sophia Lumkin and Raymond Dozier, two members of the local school council; and Angletta Ashford, a part-time security officer at Parkside.

¶ 11       While the hearing officer considered all of the witnesses' testimony, the Board on remand expressly made its decision to terminate plaintiff's employment based on the testimony of only three witnesses: plaintiff, Rohe, and Thompson; and only focused on the alleged "push" of October 28, 2008, and the alleged "choke" of October 30, 2008, as well as evidence of a prior incident for which plaintiff was allegedly reprimanded. Thus, we relate the evidence relied upon by the Board in greater detail, and only provide such testimony of the other witnesses as will assist in the understanding of the sequence of events in the case at bar.

¶ 12                                    A. Kenneth Wiggins

¶ 13          While considered by the hearing officer, Wiggins' testimony does not appear to have

been considered by the Board as a basis for terminating plaintiff's employment. Thus, we include

it only to provide an understanding of the administrative proceedings.

¶ 14          Kenneth Wiggins, an investigator for the Board's law office and a detective with the

Chicago police department, testified that in his capacity as an investigator, on December 1, 2008,

he was assigned to investigate allegations of physical abuse committed by plaintiff. The basis of

the investigation was an incident report that Wiggins received, dated October 31, 2008, as well

as a second document, an "incident information report," that he received as part of the file. There

was some confusion in the incident information report as to the date of the incident, but Wiggins

believed that the incident occurred on October 28, 2008, and that there was only one incident to

investigate.

¶ 15          According to the incident information report, "on Tuesday, October 28, J.[W., a

student,] indicated that Ms. Kimble grabbed him by the back of his neck and took him to the

counselor's office. *** [H]e indicated that she grabbed him by his shirt twice and choked him."

Wiggins testified that the incident report also indicated that DCFS was contacted regarding the

incident.

¶ 16          On March 13, 2009, Wiggins visited the school and met the principal, Dorothy

Thompson, and interviewed witnesses, including the alleged victim and four other students at the

school. Later in the investigation, he also interviewed plaintiff. After concluding his

investigation, Wiggins determined "[t]hat credible evidence did exist to support the allegation."

¶ 17          Wiggins testified that, as part of his investigation, he spoke to J.W., the victim, alone

in the principal's office. During the interview, J.W. informed Wiggins that on the day in

question, the class had left the classroom, lined up, and went to the gym. Plaintiff then grabbed J.W. by the back of his neck and then, when they reached room 103, she released his neck and pushed him in through the door; Wiggins did not attempt to establish the level of force, since "[a] push is a push, regardless of the level." J.W. did not tell Wiggins that plaintiff had grabbed his shirt and choked him, and he also did not tell Wiggins that he had hit his face against the wall or that he had been injured.

¶ 18    Wiggins also interviewed Cari Rohe, a counselor at the school, who informed him that plaintiff asked Rohe if she could bring someone into Rohe's office, and Rohe agreed. Plaintiff then "pushed [J.W.] in his back toward the chair."

¶ 19    Wiggins interviewed plaintiff a few days later, on March 17, and found plaintiff to be pleasant. Plaintiff told Wiggins that she had informed J.W. that he would not be attending gym class because he had not completed a reading assignment. When it came time to leave for class, she lined up the class to escort them to the gym. When they reached the gym, she asked J.W. to move to the back of the line, and he refused. When he refused to leave the line, she approached J.W. and grabbed both of his hands; J.W. struggled to get away. She then escorted J.W. to Rohe's office and asked Rohe if J.W. could sit there. Plaintiff denied pushing J.W. into the office and denied grabbing him by the shirt; Wiggins did not believe plaintiff, because "I knew that she grabbed him, not necessarily by his shirt, but I knew that she had grabbed him." Plaintiff also denied choking J.W., and Wiggins believed her. Wiggins believed that "[s]ome parts" of what plaintiff was saying were true, because "[b]asically she gave the same account of everyone else." "[I]n essence," Wiggins concluded "[t]hat she grabbed him by both hands and she pushed him in the back."

¶ 20                                          B. Sarah Barber

¶ 21        Barber's testimony was not considered by the hearing officer or the Board as a basis

for terminating plaintiff's employment. Thus, we include it only to provide an understanding of

the administrative proceedings.

¶ 22        Sarah Barber, a consultant with CPS and former assistant principal at Parkside,

testified to an alleged incident between Barber and plaintiff that occurred on December 2, 2008,

when she was working as a consultant at Parkside.

¶ 23        Barber further testified that she was familiar with J.W., who was a fourth grader, and

that he was "a very smart young man" who was in a gifted class. She had never known him to

fabricate stories.

¶ 24                                          C. Cari Rohe

¶ 25        Rohe's testimony was considered by the Board as a basis for terminating plaintiff's

employment. Thus, we relate it in detail as to the "push" and "choke" allegations considered by

the Board.

¶ 26        Cari Rohe, a counselor at Parkside who also assisted with discipline, testified that she

was familiar with J.W., who was a fourth-grader and a new student at Parkside during the 2008-

09 school year. On October 28,[2] 2008, Rohe had just returned to her office with lunch after

attending a meeting and was sitting at her desk when the door opened. When she looked up, J.W.

"was coming rather quickly into the office into a chair" near the entrance of her office. Plaintiff

was accompanying J.W. and looked at Rohe and told her that J.W. needed a "time out" and that

she tried to place him "across the way," but he refused, so she wanted to keep him in Rohe's

office. Rohe agreed, and plaintiff closed the door. After plaintiff had departed, J.W. told Rohe

_____

    [2] Rohe testified that the incident occurred on October 30, but the record indicates that the "push" incident allegedly occurred on October 28.

8

that his neck hurt and placed his hand around his neck. Rohe asked him why his neck hurt and "he said Ms. Kimble had her hand around his neck." J.W. then told Rohe that his head also hurt because "apparently when she took him to go to the room across from me, *** he hit his head." At that point, "I was like okay, if he is saying this, [and] it did happen, it's over my head." Rohe contacted the principal to inform her of what J.W. was saying. Rohe testified that "when [J.W.] said that he was pushed, of course I believed him because I kind of saw the end of it, but didn't see any – you know, physical pushing."

¶ 27　　　Rohe testified that J.W. did not have any misconduct reports for violations of the student code of conduct as of the time that he made his accusation against plaintiff. Rohe further testified that plaintiff never initiated a "school-based, problem-solving document" on J.W., which was a form detailing a process used when a teacher was having difficulty with a student either academically or behaviorally.

¶ 28　　　Rohe testified that Jennifer Figueroa was plaintiff's daughter and was a counseling intern at Parkside during 2008. Figueroa worked a few days per week, sporadically. Rohe never asked Figueroa to create an individual counseling case note on J.W. and never saw an individual counseling case note created by Figueroa. However, on cross-examination, Rohe testified that J.W. had received counseling services from Figueroa and Sheila Washington, another intern.

¶ 29　　　Rohe testified that at some point, it came to her attention that J.W. had stated that he observed his father kill his baby brother. Rohe reported the statement to the school social worker, Eric Cochran, who met with J.W.

¶ 30　　　Rohe also testified about another incident between plaintiff and a different fourth-grade student, and testified about an incident between plaintiff and the principal, Dorothy Thompson.

¶ 31                               D. Dorothy Thompson

¶ 32         Thompson's testimony was considered by the Board as a basis for terminating plaintiff's employment. Thus, we relate it in detail as to the "push" and "choke" allegations considered by the Board, as well as the incident for which plaintiff was previously reprimanded, also considered by the Board.

¶ 33         The Board's next witness was Dorothy Thompson, the principal at Parkside, who testified that J.W. was a new student, approximately nine years old, who arrived at Parkside in September 2008. His mother was in the military, so he lived with his grandparents; J.W. had moved from Louisiana prior to attending Parkside. J.W. was no longer attending Parkside and was no longer in the CPS system.

¶ 34         Thompson testified that on October 30, 2008, J.W. came into her office, and "his shirt was wrinkled in the front" and "he had indicated that Ms. Kimble had grabbed him and choked him." Thompson later discovered that there had been an earlier incident on October 28, in which she was told that "he walked into the room and was – you know, was pushed or grabbed by the back of the neck." When she learned of the October 28 incident, she placed it in the same incident report as the October 30 incident but forgot to indicate that they occurred on different dates. Thompson reported these incidents to DCFS; DCFS determined that the allegations of abuse were unfounded.

¶ 35         Thompson testified that there was also a third incident, on November 6, when J.W. ran down to her office crying and shaking, saying that plaintiff had the class scream at him because of the DCFS investigation. Plaintiff also entered Thompson's office and looked at J.W., and J.W. ran out of the office.

¶ 36      Thompson completed a notice of predisciplinary hearing on November 13, 2008, and listed all three of the incidents involving J.W.

¶ 37      Thompson also testified to several other incidents involving plaintiff, including an incident on March 15, 2008, in which a parent complained to her that plaintiff picked up a child and placed the child in a chair, resulting in the child hitting his head on a desk. Plaintiff admitted to shaking the child, and police were contacted. No police report was completed, but Thompson removed the child from plaintiff's classroom, created an incident report, and filed documents with DCFS; the DCFS report concluded that the allegation of abuse was unfounded.

¶ 38                          E. Student D.W.

¶ 39      D.W.'s testimony was not considered by the Board as a basis for terminating plaintiff's employment. Thus, we include it only to provide an understanding of the administrative proceedings.

¶ 40      D.W., a 10-year-old boy who was in plaintiff's class at Parkside the prior year, testified as to his knowledge of the "pushing" incident.

¶ 41                          F. Jennifer Figueroa

¶ 42      Figueroa's testimony was not considered by the Board as a basis for terminating plaintiff's employment. Thus, we include it only to provide an understanding of the administrative proceedings.

¶ 43      Jennifer Figueroa, plaintiff's daughter, testified that she had spent 50 hours working at Parkside under Rohe as part of a practicum requirement for her master's degree in school counseling. Figueroa testified that she worked with J.W., whom Rohe suggested Figueroa work with because "[h]e would be called down to the office a lot for a lot of discipline problems. So when he would come down for his discipline problems, she figured that that was a good way for

me to talk to those students as they come down for me to kind of see what's going on with them." Figueroa further testified that when a student was sent to the counselor's office, he or she would have a referral from the teacher, explaining why the student was being sent to the office. J.W. had "a lot" of these referrals, with "about six to eight of them" by early September and October.

¶ 44                                  G. Plaintiff

¶ 45        Plaintiff's testimony was considered by the Board as a basis for terminating plaintiff's employment. Thus, we relate it in detail as to the "push" and "choke" allegations considered by the Board.

¶ 46        Plaintiff testified that she had been teaching at CPS for 21 years. In the fall of 2008, she was assigned to work in a classroom with third-, fourth-, and fifth-grade gifted students. During one "gym day," plaintiff informed J.W. during class that if he did not complete his reading assignment, he would not be permitted to attend gym class; J.W. did not complete his reading assignment. When it was time for gym, the class lined up, and J.W. was standing in the back of the line. Plaintiff told J.W. that he was not going to be attending gym and ordered him to step out of the line, but he refused. Plaintiff took him by the hand and removed him from the line, while the other students went into the gym; plaintiff testified that she used one hand and did not "pull or drag" him or otherwise use any force against him. Plaintiff took J.W. downstairs to a different classroom, but decided against leaving him there. Across from the classroom was Rohe's office. Plaintiff observed Rohe walking down the hall with her lunch and waited a minute for her to enter her office. Plaintiff then opened the door and asked Rohe if J.W. could stay there until after gym class. Rohe agreed.

¶ 47        Plaintiff denied grabbing J.W. by the shirt or by the back of the neck and denied hitting J.W.'s head against the wall. She learned on October 31 that J.W. had accused her of corporal punishment.

¶ 48        Plaintiff testified that on November 6, 2008, she met with a DCFS investigator and denied grabbing or choking J.W. She returned to her class and asked, "[D]id anyone see me do anything to hurt J.W.? Have you ever seen me choke him or anything? And they said, no, Ms. Kimble, you didn't do that. I said, well, they're saying that I did that to J.W." J.W. was not in the room at that time, but when he returned, "one little boy said, Ms. Kimble didn't do nothing to you. Why you lie on Ms. Kimble like that?" Plaintiff testified that the students "were all rared up at J.W., and [she] had to calm them down."

¶ 49                                H. Posthearing Briefs

¶ 50        After the hearing, the parties filed posthearing briefs. One of the arguments in plaintiff's brief was that the Board failed to carry its burden of proving the allegations of abuse. Plaintiff argued that "[t]he Board would strip Ms. Kimble of her tenured teaching position, relying on virtually nothing but hearsay statements allegedly made by young children, interviewed months after the events at issue" and further noted that "[t]he accusing witness, J.W., did not appear." Plaintiff specifically argued that "Ms. Kimble's inability to cross-examine J.W., [and] the other students who were interviewed by Wiggins, violates her due process confrontation clause rights."

¶ 51        Attached to the Board's posthearing brief was a copy of a resolution passed by the Board on July 28, 2004. The resolution provide, "The Board deems that certain acts of employee misconduct are *irremediable* and warrant discharge of any employee who engaged in such conduct *immediately and without further warning* and said acts of misconduct are set forth in

Sections 4 and 5 of the Policy's Acts of Misconduct Section." (Emphasis in original.) The resolution then "further emphasize[d] that the following acts of misconduct are prohibited and shall be presumed, absent mitigating factors, to be irremediable and shall justify immediate discharge of employees," and specified "Corporal punishment that results in the deliberate use of physical force with a student in violation of Section 4-25 of the Policy's Acts of Misconduct Section." The resolution provided that it would be distributed to all CPS employees "and shall be deemed adequate forewarning of the types of misconduct that shall lead to immediate discharge."

¶ 52                    III. Hearing Officer Recommendation and Board Adoption

¶ 53          On April 11, 2010, the hearing officer issued a recommendation concerning plaintiff's termination. The hearing officer found that plaintiff violated the CPS employee discipline and due process policy, as alleged in charges 1, 2, 3, 4, 5, and 6 and specifications 1, 2, 4, 5, 6, 7, 8, and 9, and recommended that the Board uphold plaintiff's dismissal. In short, the hearing officer found that the Board had proven all of the charges and specifications, except that, concerning the allegation that plaintiff grabbed J.W. by the neck and J.W. hit his eye on the edge of a wooden border, "[t]here was no direct or circumstantial evidence produced at the hearing to sustain this charge/specification."

¶ 54          Concerning the allegation that on October 28, 2008, plaintiff grabbed J.W. by the neck and pushed him into a room, the hearing officer found that "[t]he Board's evidence established that on October 28, 2008, the Respondent physically removed J.W. from a line of her students waiting to enter gym class. The Respondent then physically guided J.W. down the school stairway with her hand on his neck, and eventually into school Counselor Rohe's office." The hearing officer further found that while plaintiff denied pushing J.W. into Rohe's office, "the Board's evidence is found to be more credible and convincing than the Respondent's

blanket denial," noting that "[o]n cross-examination, the Respondent categorically denied *** engaging in any past conduct alleged by any school staff, or students, for which she received discipline or counseling, and asserted they were all lying." The hearing officer also pointed to the fact that, while plaintiff testified that she met Rohe in the hallway while taking J.W. to Rohe's office, "[t]here is no record of the Respondent claiming she met Rohe in the hallway prior to the hearing. Thus, the Respondent's last minute effort to distort the facts, or sequence of events, further impugns her credibility regarding this incident." Finally, the hearing officer noted that plaintiff's counsel conceded that plaintiff " 'lightly led' J.W. by the 'back of his neck,' to Rohe's office. Thus, the Respondent's rendition of the incident up to Rohe's office[] supports J.W.'s and Rohe's subsequent account of the final push into Rohe's office."[3]

¶ 55        The hearing officer also addressed the absence of J.W. from the hearing, noting that his unavailability was due to his departure from CPS. However, "[w]hile enrolled as a student while in the Chicago Public Schools, J.W. fulfilled his responsibility to report the Respondent's conduct to the school administrators as charged in Specification 6. In each event, J.W. immediately and eagerly reported how he perceived the Respondent's conduct." The hearing officer concluded that, "[u]nder the circumstances, the school administrators reasonably relied on the truthfulness of such perceptions when pursuing disciplinary action" and noted that "J.W. subsequently corroborated his instantaneous impressions when speaking with Investigator Wiggins at a later date." The hearing officer found that J.W.'s credibility was not diminished by the testimony of D.W. or by J.W.'s receipt of services from the counselor's office. With regard to D.W., the hearing officer found that "what D.W. recalled J.W. telling the class about the

---

[3] In plaintiff's posthearing brief, under a section entitled "Assuming Ms. Kimble Engaged in the Alleged Conduct, it was Remediable," the brief states: "On the overwhelming evidence, Ms. Kimble took J.W. by the hand. At most, on the hearsay of J.W. himself, Ms. Kimble lightly led J.W. by the back of the neck, in response to provocation by this unruly student." We note that this statement appears at the beginning of the last paragraph on page 44 of the posthearing brief, not page 12 as stated in the hearing officer's recommendation.

Respondent's treatment of him on October 28 was more similar than dissimilar in each instance. J.W. fundamentally told his classmates the same thing he told the school administrators and Investigator Wiggins." The hearing officer further found that "[t]he fact that J.W. received services in the counselor's office to address an unconfirmed statement about his family life fails to impugn his credibility. J.W.'s willingness to participate in counseling services and seek out school administrators to address personal issues shows that he trusted them to protect and assist him. It does not establish that he lied to them, or that he did [not] understand what it means to tell the truth."

¶ 56    The hearing officer also found that it was more likely than not that plaintiff grabbed J.W. by the front of his shirt on October 30, 2008, "[b]ased upon the Respondent's prior physical intimidation of J.W., her subsequent verbal intimidation of J.W., and J.W.'s instantaneous reporting of the October 30 incident." The hearing officer further noted that "J.W.'s immediate physical impression was that the Respondent was choking him when she grabbed him by the front of his shirt. Thus, J.W. immediately proceeded to Principal Thompson's office to report the event. The noticeable wrinkling on the front of J.W.'s shirt corroborated his perception. Whether the Respondent intended to choke J.W. when she grabbed the front of his shirt is irrelevant."

¶ 57    On May 26, 2010, the Board adopted a resolution in which, "[a]fter considering (a) the hearing officer's findings of fact, conclusions of law, and recommendation, (b) the record of the dismissal hearing, and (c) any exceptions and memorandum of law submitted by the parties, the Board of Education of the City of Chicago adopts the recommendation of the hearing officer" and dismissed plaintiff from employment with the Board.

¶ 58                                    IV. Administrative Review

¶ 59          On July 1, 2010, plaintiff filed a complaint for administrative review in the circuit

court of Cook County, claiming that the Board's decision was contrary to law and against the

manifest weight of the evidence. The complaint focused on the fact that plaintiff "was the only

witness to the alleged event who testified at the hearing" and that the hearing officer relied on

inadmissible hearsay to sustain the charges against plaintiff.

¶ 60          On May 23, 2011, the parties came before the trial court on plaintiff's complaint for

administrative review. The trial court found that the charges concerning plaintiff's allegedly

humiliating J.W. in front of the class were unsupported by the record. While the court noted that

it was inappropriate for plaintiff to discuss the allegations made by J.W. with the class, "there's

nothing in the record to indicate that that act was somehow cruel." With regard to the allegations

concerning the "push" and the "choke," the trial court stated:

>           "I must tell you all that I have some concerns. And these are the concerns:
>
>           I'm mindful of the argument that the Respondent, the Board of Education,
>
>           the State Board of Education makes regarding the introduction of certain
>
>           hearsay evidence and certain hearsay evidence that seems to have been
>
>           solicited by the Plaintiff. The problem I find is that there was some
>
>           hearsay evidence that was introduced that the Plaintiff did object to. And
>
>           the fact of the matter is, I can't be certain, having read this record – and I
>
>           read the record – I can't be certain as to what evidence the hearing officer
>
>           relied upon.
>
>                   ***

I am just going to cite to the Seacrest [*sic*] case, for example. There are others that I could cite[,] too. But the Court said in that case, it said this: In our opinion, the consideration of testimony about prior unrelated incidences could only serve to color the outlook of the hearing officer and encourage her to conclude that Plaintiff was a man given to attacks, so forth and so on. Under these circumstances the due process requirements of a fair and impartial hearing before a fair and impartial tribunal could not be met.

And so I have concerns, quite frankly, about the introduction of evidence, which appears to me to be clearly hearsay, and in some instances was objected to, and whether or not the hearing officer relied upon that evidence in making her determination. Now she says – the hearing officer does, at points in the record that, you know, I am going to allow this hearsay – I am paraphrasing. I am going to allow this hearsay, but I am not sure – but I'm not saying that I am going to rely on it.

Now, that's well and good and I think probably in the course of trials that I have presided over I may have taken the same position, but at some point in enunciating one's decision, I think it's important that what the basis of your opinion is, is well-documented or well set out so that one knows what you relied upon in making the decision.

And so, frankly, in this instance, I am not sure. So I believe that on that issue there is a basis for me to remand that issue back to the Board for

hearing on the issue of push, the shove, the choke, excluding that sort of unrelated, those sort of unrelated instances."

¶ 61     The same day, the trial court entered an order in which: (1) "As to the charge that Plaintiff 'incit[ed] the students in J.W.'s class to scream at him and ridicule him, among other things:' the Hearing Officer is REVERSED"; and (2) "As to the charges that Plaintiff 'grabbed J.W. by the neck again, and pushed him into a room;' and that 'on or about October 30, you grabbed J.W. by the front of his shirt and choked him,' the case is REMANDED for further findings of fact consistent with [*Secrest v. Department of Corrections*, 64 Ill. App. 3d 458 (1978)]."

¶ 62                              V. Response on Remand

¶ 63     The hearing officer issued a "Response to Order of Remand," in which she stated that she had not relied on Barber's testimony when reaching the conclusion that plaintiff engaged in prohibited corporal punishment. The hearing officer further stated:

> "The Hearing Officer has reviewed the case of *Secrest v. The Department of Corrections*, 64 Ill. App. 3d 458 (2d Dist. 1978), and respectfully asserts that the Respondent was not prejudiced by the admission of Barber's testimony, and the admission of such testimony did not deny the Respondent's right to due process. The Hearing Officer's Findings of Fact and Recommendation to the Board were not based upon any incompetent evidence, and any error in admitting such testimony did not materially effect [*sic*] the rights of the Respondent or cause her an injustice.

The Hearing Officer further asserts that her Findings of Fact are consistent with Judge Leroy Martin's instructions."

¶ 64     On January 25, 2012, the Board issued a supplemental order on remand in which it stated that "the Board of Education, on remand and reconsideration in light of Judge Martin's ruling, rejects those parts of the hearing officer's findings and recommendations that are based upon challenged hearsay and unrelated incident[s]." The Board resolved:

"After considering (a) the Hearing Officer's findings of fact, conclusions of law and recommendation, (b) the record of the dismissal hearing, (c) exceptions and memoranda of law submitted by the Petitioner and Respondent, (d) the ruling of Judge Martin reversing the Board's previous order in part and remanding the matter for clarification and further decision, (e) Hearing Officer Cohen's Response, and (f) the further arguments and exceptions of both Petitioner and Respondent, the Board of Education of the City of Chicago accepts the Hearing Officer's Response, and also accepts in part, and rejects in part, the Hearing Officer's initial findings of fact and legal conclusions, with the exceptions noted in the Appendix to this Resolution. *** Sharon Kimble is discharged from her employment with the Board of Education effective January 25, 2012, for the reasons stated here and in a separate Opinion and Order adopted as part of this Resolution."

The appendix referred to by the resolution provided:

"1. The Board rejects the Hearing Officer's findings that are based upon hearsay statements of students, except for the excited utterances by

20

J.W. to Ms. Rohe on October 28, 2008 and to Principal Thompson on October 30, 2008, and the testimony regarding shaking of a sleeping student in 2007 that was elicited by Ms. Kimble's counsel during cross examination.

2. The Board does not accept the Hearing Officer's findings on any incidents other than the incidents of October 28 and October 30, 2008, and both the incident of shaking a sleeping student in 2007 as well as the written reprimand that was issued for that incident.

3. On the issue of retaliation and humiliation of student J.W. that was subject to Judge Martin's reversal order, the Board did not consider that incident in its decision on remand. However, the Board reserves its right to rely upon that portion of the Hearing Officer's findings and recommendation as to that issue on appeal."

¶ 65    The Board also issued a supplemental order on remand, as referenced in the resolution, in which it noted that, "[i]n summary, the Board on remand has, in accordance with the direction from Judge Martin, considered only those incidents that were proved with evidence that was presented by direct testimony, unchallenged hearsay or corroboration. The two incidents occurred on October 28 and 30, 2008." Concerning the October 28, 2008, incident, the Board relied on the hearing officer's findings that "Ms. Kimble grabbed student J.W. by the neck when he refused to respond to her order that he step out of the line that was formed for gym" and "held him by the neck until she led him into the office of counselor Cari Rohe, at which point Ms. Kimble pushed J.W. into the office." The Board noted that the findings were based upon the following evidence:

"i) The admission of Ms. Kimble that she ordered J.W. to step out of the line because he had not completed his assignment, and that he refused. She admitted that she walked him to Room 103, but needed to change plans and took him to the counseling office instead. Counsel for Ms. Kimble also admitted that Ms. Kimble 'lightly led' J.W. by the 'back of his neck' to Ms. Rohe's office.

ii) The testimony of Ms. Cari Rohe that she saw J.W. entering her counseling office 'in motion kind of fast' with Ms. Kimble behind him. [Citation.]

iii) The statement of J.W. to Ms. Rohe, the evidence of which Ms. Kimble did not challenge, that his neck hurt because Ms. Kimble had her hand around his neck. [Citation.] This statement may also be considered an excited utterance by J.W."

¶ 66    The Board further noted that the following evidence supported the allegation that plaintiff had choked J.W. on October 30, 2008:

"1. Student J.W. went to the office of Principal Thompson and reported that Ms. Kimble had grabbed him by the shirt collar twice and choked him. Counsel for Ms. Kimble did not object to this testimony. [Citation.]

2. Principal Thompson testified that she observed that J.W.'s shirt-front was wrinkled. [Citation.]

3. Principal Thompson also testified that she was not aware of the allegations about the October 28 incident when she initiated disciplinary proceedings for the October 30 conduct reported by J.W.

4. Investigator Wiggins testified that he did not investigate the October 30 allegations.

5. HO Cohen decided that there was sufficient evidence that Ms. Kimble did choke J.W. on October 30. She based her finding upon that J.W. 'instantaneously' reported the incident. [Citation.] She also noted that Principal Thompson was credible, and that she had observed the wrinkling in J.W.'s shirt near the neck area shortly after the time of the alleged incident. [Citation.]"

¶ 67    Finally, the Board determined that the prior incident of shaking a student in 2007 could be considered because there was an admission by plaintiff and the testimony regarding the accusation was elicited by plaintiff's attorney while cross-examining Thompson. The Board also concluded that the written reprimand as a result of the incident was properly admitted under the business records exception "only to show the business of the school principal in having investigated and acted in a matter for which a Written Reprimand was issued."

¶ 68                    VI. Further Administrative Review

¶ 69    On March 12, 2012, plaintiff filed an amended complaint for administrative review, which added a count seeking administrative review of the January 25, 2012, supplemental order on remand. Plaintiff claimed that the Board did not have jurisdiction to modify its May 26, 2010, resolution, in which it adopted the hearing officer's recommendation, and also claimed that the

hearing officer's recommendation, as supplemented, was inadequate to sustain plaintiff's dismissal.

¶ 70        On October 15, 2012, the trial court entered an order affirming the Board's decision.[4] This appeal follows.

¶ 71                                ANALYSIS

¶ 72        On appeal, plaintiff argues that (1) the termination proceedings denied her due process; (2) the Board failed to follow the trial court's directions on remand; and (3) the hearing officer's and the Board's findings of fact and conclusions of law were contrary to law and against the manifest weight of the evidence.

¶ 73        The decision of the Board to terminate plaintiff's employment is an administrative decision and judicial review is governed by the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2008)). 105 ILCS 5/34-85b (West 2008). In the case of an administrative review action, we review the decision of the administrative agency and not the decision of the circuit court. *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 531 (2006) (*per curiam*). In reviewing the actions of an administrative agency, "[t]he findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct." 735 ILCS 5/3-110 (West 2008). The reviewing court is not to reweigh the evidence or make an independent determination of the facts. *Kouzoukas v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 234 Ill. 2d 446, 463 (2009).

¶ 74        The propriety of the agency's findings of fact will be upheld unless they are against the manifest weight of the evidence. *Kouzoukas*, 234 Ill. 2d at 463; *Marconi*, 225 Ill. 2d at 532.

_____

[4] The appendix to plaintiff's brief on appeal contains a transcript of the October 15, 2012, hearing before the trial court. However, this transcript is not contained in the record on appeal and therefore is not considered on appeal. As the transcript is not necessary for the resolution of the issues on appeal, we do not order plaintiff to supplement the record.

"An administrative agency decision is against the manifest weight of the evidence only if the opposite conclusion is clearly evident." *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88 (1992). The fact that the opposite conclusion is reasonable or that the reviewing court may have reached a different outcome does not justify reversal of the administrative findings. *Abrahamson*, 153 Ill. 2d at 88. "If the record contains evidence to support the agency's decision, it should be affirmed." *Abrahamson*, 153 Ill. 2d at 88-89.

¶ 75                                      I. Due Process

¶ 76       Plaintiff first argues that she was denied her right to due process, in that (1) the admission of J.W.'s hearsay testimony violated her right to confront her accuser and (2) she was denied her right to notice of the specific charges against her. Whether a party's due process rights were violated during the administrative hearing is a question of law that we review *de novo*. *Board of Education of Valley View Community Unit School District No. 365-U v. Illinois State Board of Education*, 2013 IL App (3d) 120373, ¶ 40. *De novo* consideration means we perform the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011).

¶ 77       A tenured teacher has a property interest in continued employment that is protected by the principles of due process. *Board of Education of Community Consolidated School District No. 54 v. Spangler*, 328 Ill. App. 3d 747, 755-56 (2002). "[D]ue process is a flexible concept and requires only such procedural protections as fundamental principles of justice and the particular situation demand." *Abrahamson*, 153 Ill. 2d at 92. " '[P]rocedural due process in an administrative proceeding does not require a proceeding in the nature of a judicial proceeding' " (*Abrahamson*, 153 Ill. 2d at 92 (quoting *Telcser v. Holzman*, 31 Ill. 2d 332, 339 (1964))), but on administrative review, a reviewing court " 'has a duty to examine the procedural methods

25

employed at the administrative hearing, to insure that a fair and impartial procedure was used' " (*Abrahamson*, 153 Ill. 2d at 92-93 (quoting *Middleton v. Clayton*, 128 Ill. App. 3d 623, 630 (1984))).

¶ 78    "A fair hearing before an administrative agency includes the opportunity to be heard, the right to cross-examine adverse witnesses, and impartiality in ruling upon the evidence." *Abrahamson*, 153 Ill. 2d at 95. "If the procedures used by an administrative agency violate fundamental fairness and a party's due process rights, the appellate court should reverse the agency's decision." *Hearne v. Chicago School Reform Board of Trustees of the Board of Education for the City of Chicago*, 322 Ill. App. 3d 467, 484 (2001) (citing *Dimensions Medical Center, Ltd. v. Elmhurst Outpatient Surgery Center, L.L.C.*, 307 Ill. App. 3d 781, 795 (1999)).

¶ 79    In the case at bar, plaintiff argues that the use of J.W.'s hearsay testimony violated her due process right to cross-examine adverse witnesses. "Generally, procedural due process protections preclude the admission of hearsay evidence in an administrative proceeding." *Chamberlain v. Civil Service Comm'n of the Village of Gurnee*, 2014 IL App (2d) 121251, ¶ 47. However, " 'where there is sufficient competent evidence to support an administrative decision, the improper admission of hearsay testimony in the administrative proceeding is not prejudicial error.' " *Abrahamson*, 153 Ill. 2d at 94 (quoting *Goranson v. Department of Registration & Education*, 92 Ill. App. 3d 496, 501 (1980)). Additionally, the strict rules of evidence that apply in a judicial proceeding are not applicable to proceedings before an administrative agency. *MJ Ontario, Inc. v. Daley*, 371 Ill. App. 3d 140, 149 (2007); *Ivy v. Illinois State Police*, 263 Ill. App. 3d 12, 19 (1994); see also 23 Ill. Adm. Code 51.60(d)(2), amended at 29 Ill. Reg. 10108 (eff. June 30, 2005) ("The hearing officer shall be the judge of the relevancy and materiality of the evidence offered and strict conformity to legal rules of evidence shall not be necessary.").

¶ 80        The Board argues that plaintiff's argument must fail because she did not object to the use of J.W.'s statements during the hearing. "It is well established that when hearsay evidence is admitted without an objection, it is to be considered and given its natural probative effect." *Jackson v. Board of Review of the Department of Labor*, 105 Ill. 2d 501, 508 (1985). However, during plaintiff's testimony, plaintiff's counsel responded to an objection about an alleged conversation with J.W.'s family by commenting that "I don't think the allegations should be in the record at all without him being present to testify." Thus, while no formal objection appears to have been made during the hearing, plaintiff's counsel made it clear that the use of J.W.'s statements in his absence was problematic. Additionally, plaintiff did raise the issue of J.W.'s absence in her posthearing brief and argued that the use of his statements violated due process. Thus, the issue was raised during the administrative proceeding, prior to the hearing officer issuing her recommendation. Indeed, the hearing officer specifically mentioned plaintiff's arguments about J.W.'s hearsay statements in her recommendation and addressed J.W.'s absence. Moreover, "waiver is an admonition to the parties rather than a limitation on this court's jurisdiction, and *** it may be relaxed in order to maintain a uniform body of precedent, or where the interests of justice so require." *Texaco-Cities Service Pipeline Co. v. McGaw*, 182 Ill. 2d 262, 279 (1998). In the case at bar, we find that the interests of justice require us to consider plaintiff's due process argument.

¶ 81        In support of her argument that admission of J.W.'s hearsay statements violated due process, plaintiff primarily relies on the case of *Colquitt v. Rich Township High School District No. 227*, 298 Ill. App. 3d 856 (1998). There, a student sought review of the Board of Education's decision to expel him due to a verbal confrontation between the student and three other students. *Colquitt*, 298 Ill. App. 3d at 857-58. The three other students were not present at the hearing, but

their statements were admitted into evidence over objection by the student's attorney. *Colquitt*, 298 Ill. App. 3d at 858. On appeal, the student argued that admission of the statements denied him due process by denying him the right to confront and cross-examine his accusers. *Colquitt*, 298 Ill. App. 3d at 864. The appellate court agreed, noting:

> "Although three independent witnesses were present to observe portions of the behavior and the language of [the student], none of those witnesses were present at the inception of the confrontation. In fact, the only accusing witnesses against [the student] who allegedly observed the entire incident were not even present at the hearing. Here, the outcome of the hearing was directly dependent on the credibility of witnesses whose statements were received by the hearing officer; yet, these statements were conflicting. In such an instance, the opportunity for cross-examination is imperative." *Colquitt*, 298 Ill. App. 3d at 864.

Plaintiff argues that here, like in *Colquitt*, the outcome of the hearing was dependent on J.W.'s credibility and there was no competent evidence corroborating the improper hearsay testimony. We agree.

¶ 82        In the case at bar, none of the witnesses present at the hearing observed the entirety of either the "push" or the "choke." Thus, without J.W.'s testimony, the remaining evidence -- plaintiff's, Rohe's, and Thompson's testimony -- is clearly insufficient to support plaintiff's dismissal. With regard to the "push" allegation, Rohe testified that she observed J.W. entering her office quickly, but that she did not actually observe any push; while plaintiff testified that she took J.W.'s hand to remove him from the class line and brought him to Rohe's office, she denied holding J.W.'s neck or pushing him. With regard to the "choke" allegation, Thompson testified

that she observed J.W. with his shirt wrinkled. Thus, there can be no dispute that the outcome of the hearing was directly dependent on the credibility of the statements given by J.W. Consequently, as in *Colquitt*, we cannot find that the requirements of due process were satisfied where plaintiff was unable to challenge J.W.'s statements through cross-examination due to his absence from the hearing. Instead, we must find that plaintiff's right to due process was violated where she did not have the opportunity to cross-examine a witness whose testimony was indispensable to the outcome of a hearing in which her constitutionally protected interest in continued employment was at stake.

¶ 83        We do not find the cases cited by the Board, in which hearsay was permitted, to be persuasive. None of those cases involved the situation here: a due process challenge to the admission of statements of the sole accusing witness despite the witness' absence from the hearing. See *Dookeran v. County of Cook*, 396 Ill. App. 3d 800, 814 (2009) (permitting comments in student evaluations that demonstrated a pattern of student complaints against the plaintiff); *Hall v. Board of Education of the City of Chicago*, 227 Ill. App. 3d 560, 565 (1992) (testimony of two fellow participants and eyewitnesses presented at hearing); *Montalbano v. Department of Children & Family Services*, 343 Ill. App. 3d 471, 478-79 (2003) (in *dicta*, noting that an administrative law judge's reliance on hearsay was not error). Thus, we do not find that these cases change our result.

¶ 84        We must emphasize that, in the case at bar, a tenured teacher is being terminated from her employment of over 20 years based almost entirely on the hearsay statements of one student, who was not present at the hearing. There were no eyewitnesses to the alleged incidents, and the only other evidence of the incidents considered by the Board was two witnesses who observed the student entering a room quickly and wearing a wrinkled shirt, respectively; the teacher denies

the conduct and testified to only taking the student's hand to remove him from the class line. While we have no way of knowing what actually occurred on October 28 and 30, 2008, it is simply unjust to terminate a tenured teacher's employment without giving her the opportunity to cross-examine her accuser, and we cannot find that such a procedure comports with due process.

¶ 85                                II. Other Arguments

¶ 86        Since we have determined that plaintiff was not afforded due process during her termination hearing, we have no need to consider the parties' other arguments.

¶ 87                                    CONCLUSION

¶ 88        Plaintiff's dismissal hearing violated her due process right to cross-examine adverse witnesses, and, accordingly, the Board's dismissal of plaintiff from her employment with the Board is reversed.

¶ 89        Reversed.