2024 IL App (1st) 230641

SIXTH DIVISION
March 8, 2024

No. 1-23-0641

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| ALAN JOSEPHSEN CO. INC., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | No. 2021 CH 05777 |
| | ) | |
| THE VILLAGE OF MUNDELEIN, | ) | The Honorable |
| | ) | Neil H. Cohen, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE TAILOR delivered the judgment of the court, with opinion.
Presiding Justice Oden Johnson and Justice C.A. Walker concurred in the judgment and opinion.

**OPINION**

¶ 1 This appeal arises out of the denial of certain relocation expenses claimed by a recycling company whose property was taken by a village through eminent domain. Finding no error, we affirm the decision of the village's hearing officer.

¶ 2 I. BACKGROUND

¶ 3 Alan Josephsen Co., Inc. (AJC), operated a recycling company at 101 E. Maple Avenue in Mundelein, Illinois. In 2019, the Village of Mundelein (Village) obtained this property for public use through its eminent domain power, which required AJC to relocate. The Village hired Land Acquisitions, Inc., a professional consulting firm with expertise in relocation expense

reimbursement, to assist AJC and other displaced businesses with relocation. Gerald Cain, the owner and principal of Land Acquisitions, Inc., who had worked in the field for more than 34 years, served as the Village's relocation consultant. On January 11, 2019, Cain informed AJC that it was eligible for relocation benefits under the Eminent Domain Act (735 ILCS 30/1-1-1 *et seq.* (West 2018)), the Displaced Person Relocation Act (310 ILCS 40/0.01 *et seq.* (West 2018)), and the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 (URA) (42 U.S.C. § 4601 *et seq.* (2018)).

¶ 4    AJC relocated to Waukegan, Illinois. Instead of submitting bills and invoices for actual relocation expenses that it paid, AJC chose to seek reimbursement for its relocation expenses pursuant to the "self-move" provision of a regulation under the URA (49 C.F.R. § 24.301(d)(2)(i) (2018). In total, AJC submitted five claims and requested $2,188,920 for relocation expenses. AJC's "Claim One" for $2500 and "Claim Two" for $25,000 were paid by the Village in full. For "Claim Four," AJC requested $19,262.50 based on an estimate it received from CMIT Solutions. After the Village obtained two estimates for the scope of work outlined in Claim Four, it paid AJC $8500, the lower of the two estimates.

¶ 5    For "Claim Three," AJC requested $324,983.50 based on an estimate it obtained from InnVantage to relocate its office furniture, equipment, and inventory. After Cain reviewed the InnVantage estimate, he determined that some of the scoped work was above what was reasonable and that $88,598 did not qualify as eligible moving expenses under 49 C.F.R. § 24.301(g). The Village then obtained two estimates for Claim Three, from Shur-Way Moving & Cartage (Shur-Way) and McCollister's Transportation Group, Inc. (McCollister's). It paid AJC $136,385.50, the lower of the two estimates, plus an additional $21,000 to cover the cost of an outside move

coordinator, an expense that was not included in the estimates provided by Shur-Way and McCollister's. The Village paid AJC a total of $157,385.00 on "Claim Three."

¶ 6    On November 21, 2019, AJC submitted "Claim Five" and requested $1,739,540 for the relocation of certain personal property under 49 C.F.R. § 24.301(g)(3) and $55,000 for the relocation of certain personal property under 49 C.F.R. § 24.301(g)(16). The estimate AJC submitted, which was prepared by RRT Design & Construction (RRT), included 11 separate expense items AJC claimed were necessary to move its heavy equipment to a new facility. Cain reviewed the claim to determine whether the amounts listed were eligible moving expenses and determined that items 6, 7, 10, and 11 were ineligible or duplicative of other claims and therefore denied them.

¶ 7    The Village then sought estimates for the work described in Claim 5. The Village received an estimate from Spiral Services (Spiral) on March 16, 2020. The estimate encompassed all items listed in Claim 5, including those Cain had already deemed ineligible. The Village then attempted to obtain a comprehensive estimate for the items Cain deemed eligible for reimbursement, but due to the COVID-19 pandemic, it had difficulty obtaining a single comprehensive estimate. Accordingly, the Village sought separate estimates for the items that Cain determined were eligible for reimbursement in Claim 5. Village administrator John Lobaito told AJC the Village would promptly pay its actual expenses for the items that Cain determined were eligible for reimbursement if AJC would submit its bills and invoices, but AJC declined to do so.

¶ 8    On June 5, 2020, the Village obtained estimates for items 3, 5, 8, and 9 in Claim 5. It paid AJC for items 3, 5, 8, and 9 based on estimates it received from NorthRange Concrete Inc. and Umbdenstock Electric Inc. The Village continued to review items 1, 2, and 4. On July 17, 2020, Lobaito asked AJC to provide specifications for AJC's equipment to assist the Village's potential

bidders. Although AJC said that it would, it never provided the specifications. In September 2020, the Village obtained estimates for the work covered by items 1, 2 and 4 in Claim 5. It paid AJC for items 1, 2, and 4 based on estimates from Ray Sagan & Sons Inc., Spiral Services LLC, and RRT Design & Construction. The Village paid AJC $554,700.25 for Claim 5. In total, the Village paid AJC $748,385.25 for relocation expenses under the self-move provision of the URA.

¶ 9      On October 7, 2020, AJC was notified of its right to appeal. On December 3, 2020, AJC provided written notice of its appeal of payments made by the Village on Claims 3 and 5. Afterwards, the Village informed AJC that it had collected all files pertinent to AJC's appeal and that it was "prepared to make them available for *** inspection and copying." The Village designated its former attorney, Charles F. Marino, to hear AJC's appeal. Marino had not been involved in the instant relocation expense claim review and ensuing dispute from which this appeal was taken. AJC asked the Village to produce any specific rules it had created to govern the appeal process, but no such rules existed. On January 11, 2021, Marino told AJC to submit any materials it wanted him to consider and said he would "consider all pertinent justification and other material *** and all other available information that is needed to ensure a fair and full review of the appeal." On January 22, 2021, AJC wrote to Marino, requesting that it be allowed to conduct additional discovery, including taking the deposition of relocation consultant Cain and others. On January 27, 2021, the Village indicated that it did "not oppose any reasonable efforts by AJC to gather whatever information it believes is necessary to support its appeal" but noted that it had "already permitted AJC to inspect and copy all non-confidential materials in the Village files that are pertinent to the appeal" and "produced the files of its consultant, Mr. Gerald Cain." In response to AJC's request to take discovery, Marino said that AJC "d[id] not cite any authority supporting his request" and he "ha[d] not found any Illinois statute or case law providing for interrogatories and

4

depositions in an administrative proceeding." He noted that "the Code of Civil Procedure does not apply to administrative proceedings." He therefore denied AJC's request to conduct additional discovery. Afterwards, AJC filed a "Motion for Substitution of Administrative Law Judge," in which it asked Marino to recuse himself and to appoint a hearing officer "who does not have an appearance of a conflict or demonstrably extensive contacts with the Village." Marino denied AJC's motion.

¶ 10     On October 11, 2021, Marino issued his decision "[b]ased on his review of the briefs and exhibits submitted on the appeal." In it, he found that the Village properly removed certain items from the scope of services and properly determined that AJC was entitled to $157,385 on Claim 3. With respect to Claim 5, Marino affirmed the Village's decision to remove certain items from the claim as well as its decision to pay $554,700.25 for AJC's eligible expenses in relocating its heavy equipment and machinery. However, he found that the Village improperly removed item 6 from Claim 5, which related to the fire sprinkler, and ordered the Village to pay AJC for the actual cost of a new fire sprinkler "in an amount to be reasonably determined by the Village Staff and Relocation Consultant."

¶ 11     AJC then appealed to the circuit court, claiming that Marino abused his discretion when he affirmed the Village's payment awards. AJC also argued that the administrative proceedings failed to afford it due process. The circuit court affirmed Marino's decision. It found that AJC was not denied due process; that Marino showed no dishonesty, bias, or prejudgment of facts; and that there was competent evidence in the record to support Marino's findings. This appeal followed.

¶ 12                                   II. ANALYSIS

¶ 13                                  A. Jurisdiction

¶ 14    We have jurisdiction to hear this appeal under Illinois Supreme Court Rules 301 and 303. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. July 1, 2017). We review the administrative agency's final decision and not the determination of the trial court. *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 531 (2006).

¶ 15                    B. The Village Properly Obtained and Based Its

Decision on More Than One Estimate

¶ 16    AJC argues that Marino misapplied the law and committed reversible error when he affirmed the Village's payments to AJC for relocation expenses based on estimates the Village obtained from multiple contractors. When a business elects to do a self-move, as AJC did here, the "self-move payment may be based on *** [t]he lower of two bids or estimates prepared by a commercial mover or qualified Agency staff person." 49 C.F.R. § 24.301(d)(2)(i) (2018). AJC contends that, under the plain language of this regulation, "the Village was allowed two and only two bids on AJC's Claim No. 5, *** and those [first] two bids were RRT and Spiral. No other bids were permitted, and *** Marino's acceptance and reliance on numerous other bids is in clear derogation of controlling law." The Village obtained the Spiral bid, and AJC obtained the RRT bid. The interpretation of agency regulations is a question of law, which we review *de novo*. *Julie Q. v. Department of Children & Family Services*, 2011 IL App (2d) 100643, ¶ 26.

¶ 17    We disagree with AJC's interpretation of the business self-move regulation for several reasons. First, "[a]s a rule of statutory construction, the word 'may' is permissive, as opposed to mandatory." *In re Estate of Ahmed*, 322 Ill. App. 3d 741, 746 (2001). Therefore, the plain language of the regulation, which states that "a self-move payment *may* be *based* on *** [t]he lower of two bids or estimates" does not mandate that the Village base its relocation payment on "the lower of two bids or estimates" as AJC contends. (Emphases added.) 49 C.F.R. § 24.301(d)(2)(i) (2018).

See *People v. Bledsoe*, 268 Ill. App. 3d 869, 871-72 (1994) ("Generally, the word 'shall' is regarded as indicative of mandatory intent."). Nothing in the regulation prohibits an agency from obtaining more than one estimate, as the Village did here, and AJC cites no authority that would lead us to conclude otherwise. The regulation does not specify or limit the number of estimates that a displaced party, like AJC, may obtain either.

¶ 18     The section of the regulation relating to self-move relocation payments is short on specifics. For example, one court has observed that "[n]either caselaw nor the regulations assign responsibility for obtaining estimates to a particular party." *In re Jensen Field Relocation Claims*, 817 N.W.2d 724, 736 (Minn. Ct. App. 2012) (analyzing the language of the self-move provision of the URA regulation). To address the issue of who can obtain estimates and how many estimates can be obtained by either party, the Village argues that the court may look to the United States Department of Transportation's (USDOT) brochure, updated in 2014 and titled, "Your Rights and Benefits as a Displaced Person Under the Federal Relocation Assistance Program," which states that, "[i]f you agree to take full responsibility for all or part of the move of your operation, the Agency may approve a payment not to exceed the lower of two acceptable bids or estimates *obtained by the Agency* from qualified moving firms, moving consultants, or a qualified Agency staff employee." (Emphasis added.) U.S. Dep't of Transp. Fed. Highway Admin., Your Rights and Benefits as a Displaced Person Under the Federal Relocation Assistance Program, at 28 (2014), https://rosap.ntl.bts.gov/view/dot/49013 [https://perma.cc/A65Q-C2XN]. The Village contends that, because an agency's interpretation of its own regulations is entitled to "great deference" by the courts (*LaBelle v. State Employees Retirement System*, 265 Ill. App. 3d 733, 735 (1994)), we should defer to the USDOT's interpretation of the regulation, which allows the agency to obtain two bids or estimates. We see no reason to reject the agency's interpretation of its own regulation.

See *Kronemeyer v. U.S. Bank National Ass'n*, 368 Ill. App. 3d 224, 229 (2006) ("This principle of deference to agency interpretation is even stronger when the agency is interpreting its own regulation. When an agency interprets its own regulation, the agency's interpretation is controlling unless plainly erroneous or inconsistent with the regulation." (Internal quotation marks omitted.)). AJC's contention that the hearing officer was limited to the Spiral and RRT bids because those were the first two bids that were submitted, on the other hand, could lead to an absurd result. For example, if AJC submitted two contractor bids to the Village in the first instance, then the Village would be precluded from obtaining its own contractor's bid and would be required to pay AJC the lower of the two bids AJC obtained. Moreover, it would make no sense to impose a limit on the number of bids a party may obtain because it would be unenforceable. If a displaced party secretly obtained multiple bids for relocation expenses but then submitted only the highest bid to the agency, there would be no way for the agency to know that the displaced party had obtained other bids. In fact, the record reflects that AJC obtained an estimate from Ray Sagan & Sons on October 24, 2017, yet it failed to submit this estimate to the Village and instead submitted only the estimate it received from RRT, which was significantly higher. Here, the Village obtained and relied on no more than two estimates for each of the items contained in Claims 3 and 5. Accordingly, we find that the Village did not violate URA regulations when it based its payments to AJC for Claims 3 and 5 on estimates from different moving companies.

¶ 19                                  C. Marino Demonstrated No Bias

¶ 20    AJC next argues that the Village's designee, Marino, exercised "impermissible judicial bias" as trier of fact in this matter. It argues that, because Marino was the Village's attorney for over 40 years, there was "at best" a "clear appearance of impropriety" and "at worst" a "conflict of interest" in him serving as the designated hearing officer. However, "[i]t is well settled that

administrative officials are presumed to be objective and capable of fairly judging a particular controversy." *Turcol v. Pension Board of Trustees of Matteson Police Pension Fund*, 359 Ill. App. 3d 795, 804 (2005); see also *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 95 (1992) ("[s]tate administrators are assumed to be men of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances" (internal quotation marks omitted)). "A mere possibility of prejudice" is insufficient to show bias. *Collura v. Board of Police Commissioners of Itasca*, 113 Ill. 2d 361, 370 (1986); *Williams v. Department of Employment Security*, 2016 IL App (1st) 142376, ¶ 46. Instead, a party must demonstrate that "the administrative proceedings were either tainted by dishonesty or contained an unacceptable risk of bias. [Citations.] Bias may be indicated if a disinterested observer might conclude that the administrative body *** had in some measure adjudged the facts as well as the law of the case in advance of hearing it." (Internal quotation marks omitted.) *Wolin v. Department of Financial & Professional Regulation*, 2012 IL App (1st) 112113, ¶ 33.

¶ 21    Here, AJC points to nothing in the record to demonstrate that Marino adjudged the facts or the law prior to hearing the case. Instead, it asserts that "Marino's forty-plus years as the Village's attorney created a biased appeal process," seemingly arguing that anyone long associated with the Village would surely be biased and therefore unqualified to review the Village's payment decisions. But AJC's argument ignores the fact that the relevant regulations require the Village (or its designee) to review its own payment decisions. See 49 C.F.R. § 24.10(f), (h) (2018) (stating that "[i]n deciding an appeal, *the Agency* shall consider all pertinent justification and other material submitted by the person, and all other available information that is needed to ensure a fair and full review of the appeal" and that "[t]he Agency official conducting the review of the appeal shall be either the head of the Agency or his or her authorized designee" (emphasis added)). See *Jensen*

*Field Relocation Claims*, 817 N.W.2d at 730 (finding a displacing university's use of its vice president to hear a displaced person's appeal of a decision denying relocation benefits complied with the URA). Accordingly, AJC's bias argument is without merit.

¶ 22                    D. The Administrative Proceedings Afforded AJC Due Process

¶ 23    AJC argues that its due process rights were violated when Marino denied its discovery requests and failed to conduct a hearing prior to issuing his decision. It argues that under 49 C.F.R. § 24.10(f) (2018), which states that an "Agency shall consider all pertinent justification and other material submitted by the person, and all other available information that is needed to ensure a fair and full review of the appeal," Marino was required to permit additional discovery, allow depositions, and provide AJC with the Village's rules regarding its handling of URA appeals. AJC also contends that Marino's failure to "provide any hearing" where it could "cross examine or challenge the Village's estimates" and his decision to deny depositions and subpoenas deprived it of due process. We review *de novo* whether the administrative proceedings violated AJC's right to due process. *Engle v. Department of Financial & Professional Regulation*, 2018 IL App (1st) 162602, ¶ 40.

¶ 24    Again, 49 C.F.R. § 24.10(f) (2018) states that, "[i]n deciding an appeal, the Agency shall consider all pertinent justification and other material submitted by the person, and all other available information that is needed to ensure a fair and full review of the appeal." While administrative proceedings are governed by the fundamental principles and requirements of due process of law (*Village of South Elgin v. Pollution Control Board*, 64 Ill. App. 3d 565, 567 (1978)), due process requirements in administrative proceedings are simpler and less formal than judicial proceedings. *Daniels v. Police Board of Chicago*, 338 Ill. App. 3d 851, 860 (2003). In administrative proceedings, the formal procedures of a trial are not required; instead, "due process

is satisfied by a procedure that is suitable for the nature of the determination to be made and conforms to the fundamental principles of justice." *Desai v. Metropolitan Sanitary District of Greater Chicago*, 125 Ill. App. 3d 1031, 1033 (1984).

¶ 25    In *Kroger Co. v. Regional Airport Authority of Louisville and Jefferson County*, 286 F.3d 382 (6th Cir. 2002), the court addressed a similar due process argument related to proceedings involving relocation payments. After the Regional Airport Authority (RAA) denied certain expenditures claimed by Kroger as ineligible relocation expenses or in excess of reasonable and necessary amounts, Kroger appealed. *Id.* at 386. In addition to reviewing the documentation that had been submitted, RAA's general manager considered Kroger's oral presentation and a written position statement but denied Kroger's request for an evidentiary hearing. *Id.* He "informed Kroger that it was free to supplement the record with additional materials or legal authorities, but Kroger did not do so." *Id.* After the general manager affirmed the RAA's determination, Kroger sought district court review of the decision. *Id.* After the district court affirmed the RAA's decision, Kroger appealed. *Id.* On appeal, the court found that the RAA did not err in denying Kroger's request for an evidentiary hearing. *Id.* at 388. It noted that "the [Administrative Procedure Act (5 U.S.C. § 551 (2000))] requires hearings only where an on-the-record adjudication is required by the appropriate substantive statute" and that the regulations "provide simply that an agency determination be made 'promptly after receipt of all information submitted by a person in support of an appeal.' " *Id.* (quoting 49 C.F.R. § 24.10(g) (2002)). The court noted that the RAA "allowed Kroger to submit any relevant information it wished to tender," then reviewed the record and permitted an oral presentation, a written statement, and a supplementation of the record. *Id.* The court concluded that "Kroger received all the process it was due under the URA, the

[Administrative Procedure Act], and the Constitution, and it was not entitled to an evidentiary hearing at any level." *Id.*

¶ 26    Similarly here, in line with the URA regulations, Marino informed AJC that he would "consider all pertinent justification and other material you submit, and all other available information that is needed to ensure a fair and full review of the appeal, including a response and any additional material from the Village's legal counsel *** and any additional material *** you submit[ ]." After the parties submitted additional materials, Marino noted that he based his decision on his "review of the briefs and exhibits submitted [i]n the appeal." We therefore find that the procedures employed by the Village complied with the relevant regulations, that an evidentiary hearing or additional discovery was not required, and that the proceedings comported with due process.

¶ 27                    E. Marino Did Not Abuse His Discretion When

He Upheld the Village's Payments

¶ 28    AJC argues that Marino abused his decision when he upheld the Village's relocation payment decisions. He argues that Marino's decision should be reviewed *de novo* because he "had never worked on a matter involving the URA before this case" and, therefore, "[h]is ruling should not be accorded any deference." However, because AJC is asking us to review an administrative agency's findings of fact, we review under the manifest weight of the evidence standard. *Abrahamson*, 153 Ill. 2d at 88. The "mere fact that an opposite conclusion is reasonable or that the reviewing court might have ruled differently will not justify reversal of the administrative findings." *Id.* Instead, "[i]f the record contains evidence to support the agency's decision, it should be affirmed." *Id.* AJC has not cited any authority to support its position that a less deferential standard of review applies because this was the first URA case Marino presided over.

¶ 29    AJC argues that Marino erred in considering "unqualified" estimates that were submitted by the Village. It asserts that several of the estimates relied upon by the Village were "unqualified" because they did not cover the scope of the entire move and instead, addressed limited scopes of work, like electrical and concrete, or because they lacked sufficient detail. However, the regulations neither indicate that self-move payments must be based on comprehensive estimates nor discuss the level of specificity required. Instead, the regulations merely state that an agency must base its self-move payments on "estimates prepared by a commercial mover or qualified Agency staff person." 49 C.F.R. § 24.301(d)(2)(i) (2018). The record reflects that the estimates prepared by RRT Design & Construction, Spiral Services LLC, McCollister's, Ray Sagan & Sons Inc., NorthRange Concrete Inc., and Umbdenstock Electric, Inc., were relied upon by Cain, who had worked in the field of relocation payments for more than 34 years, to support the Village's payments to AJC. Accordingly, we find that these estimates satisfy the language of the regulation and see no reason to deem them "unqualified." AJC points us to nothing in the record or to any authority that would lead us to conclude otherwise.

¶ 30    AJC also argues that Marino abused his discretion when he failed to consider relevant evidence, including the affidavits of Alan and Peter Josephsen, Nathaniel Egosi, and Nick Salemi and the report of Robert Swenson. However, Marino expressly stated in his decision that he "considered the exhibits submitted," which included the aforementioned affidavits and report. See *People v. Wheeler*, 226 Ill. 2d 92, 117 (2007) ("the mandate to consider all the evidence on review does not necessitate a point-by-point discussion of every piece of evidence"). It was within Marino's purview to determine how much weight to give to each piece of evidence, and we will not second-guess his factual determinations. See *Haynes v. Police Board of Chicago*, 293 Ill. App. 3d 508, 511-12 (1997) ("On administrative review, neither this court nor the circuit court can

reweigh the evidence or the determination of the credibility of the witnesses, which is to be made by the agency."). Because evidence in the record, including statements from Cain and estimates from various contractors, supported the Village's payments to AJC, we conclude that Marino's factual findings were not against the manifest weight of the evidence.

¶ 31                                     III. CONCLUSION

¶ 32    For the foregoing reasons, the decision of the Village's hearing officer is affirmed.

¶ 33    Affirmed.

*Alan Josephsen Co. v. Village of Mundelein*, 2024 IL App (1st) 230641

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2021-CH-05777; the Hon. Neil H. Cohen, Judge, presiding. |
| **Attorneys for Appellant:** | Bryan P. Lynch, of Law Office of Bryan P. Lynch, P.C., of Chicago, for appellant. |
| **Attorneys for Appellee:** | Brandy S. Quance, of Zukowski, Rogers, Flood & McArdle, of Crystal Lake, for appellee. |