2026 IL App (1st) 250557-U

SECOND DIVISION
May 12, 2026

No. 1-25-0557

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| PAUL JAEGER, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 24CH6823 |
| | ) | |
| ILLINOIS MUNICUPAL RETIREMENT FUND and | ) | |
| BOARD OF TRUSTEES OF THE ILLINOIS | ) | |
| MUNICIPAL RETIREMENT FUND, | ) | Honorable |
| | ) | David B. Atkins, |
| Defendants-Appellees. | ) | Judge Presiding. |

_____

JUSTICE McBRIDE delivered the judgment of the court.
Presiding Justice Van Tine and Justice D.B. Walker concurred in the judgment.

**ORDER**

¶ 1 *Held*: Final administrative decision denying temporary disability benefits affirmed where the agency proceedings did not violate plaintiff's due process rights.

¶ 2 Plaintiff, Paul Jaeger, is seeking reversal of the final administrative decision by defendant, the Board of Trustees (Board) of the Illinois Municipal Retirement Fund (IMRF), denying plaintiff's claim for temporary disability benefits.

¶ 3 The record shows that plaintiff is approximately 50 years old and was diagnosed during childhood with a learning disability and generalized anxiety disorder. Plaintiff was hired as a

custodian for Evergreen Park High School District 231 in August 2001, and became an IMRF participant at that time. Plaintiff worked at that job until September 23, 2022.

¶ 4     The next day, plaintiff visited Dr. John Elsen, plaintiff's family medicine doctor. Plaintiff complained of "work-related issues," explaining that he had worked as a custodian for over 20 years, and the last two years were with a "new management team." Plaintiff reported that he had received recent job performance reviews, and he was "afraid of losing his job." Plaintiff reported stress that was "affect[ing] his physical[,] mental and emotional health" along with "issues with anxiety." Dr. Elsen recommended a behavioral health screen, and prescribed him sertraline for anxiety. The notes also indicated that Dr. Elsen wrote a "[n]ote *** to be off work to get neuropsych testing, counseling and further evaluations to see if other medications would be beneficial to improve his work performance or if work needs to make accommodations for him."

¶ 5     On November 18, 2022, plaintiff saw Dr. Clark Thompson, PsyD, for evaluation, psychological assessment, and testing. Dr. Thompson noted that plaintiff had a "history of developmental delay in speech and motor coordination, learning disability and generalized anxiety disorder." Dr. Thompson stated that plaintiff was employed as a custodian, and he had "a consistent history of earning good evaluations with few shortcomings from his supervisors" for over 20 years. Approximately two years prior, plaintiff was assigned a new supervisor, who had "reportedly been dissatisfied with [plaintiff]'s work performance." Dr. Thompson noted that this was causing plaintiff to experience "substantial levels of anxiety."

¶ 6     Based on the results of the evaluation and testing, Dr. Thompson diagnosed plaintiff with "specific learning disability, with impairment in" reading, written expression, and mathematics; generalized anxiety disorder; "other problem related to employment"; and "borderline intellectual functioning." Dr. Thompson recommended that plaintiff be provided with certain employment

accommodations, in particular "additional time to complete his work assignments"; a "consistent routine"; communication from supervisors using "basic vocabulary, straightforward instructions, and deliver[y] [of] information at a rate that [plaintiff] can keep pace with"; and plaintiff's verbal demonstration "that he comprehends his assigned work duties."

¶ 7 Thereafter, plaintiff had several follow-up visits with Dr. Elsen. Notes from those visits indicate that plaintiff's anxiety symptoms were improving on sertraline. Plaintiff was cleared to work with the above accommodations by Dr. Elsen as of December 20, 2022, but plaintiff later reported to Dr. Elsen that his employer was unwilling to implement the accommodations.

¶ 8 On January 7, 2023, plaintiff applied for disability benefits based on diagnoses of "generalized anxiety disorder and an unspecified disorder or psychological development."

¶ 9 On January 9, 2023, plaintiff visited Dr. Elsen again. The visit note documented that plaintiff was "no longer feeling anxious about work since he is not going back at this time." Dr. Elsen noted that plaintiff was "[u]sing sick time and vacation right now," and he was "working on getting Social Security (SS) Disability and IMRF disability through IMRF and was not planning on going back to work at the school." On March 1, 2023, the office note documented that plaintiff's "anxiety has been stable on the medications."

¶ 10 Plaintiff was terminated from employment and IMRF participation on March 31, 2023.

¶ 11 In reviewing plaintiff's eligibility for benefits, staff members from IMRF collected information from plaintiff, his employer, and his physicians, including phone questionnaires. During plaintiff's phone questionnaire, he stated that he left work because "extra cleaning" was needed after Covid-19, which was "causing [him] anxiety." Plaintiff stated that his anxiety had gotten better since he stopped working, but that he was still frustrated and anxious at times. Plaintiff said that he had "some testing done" by Dr. Thompson, but he did not otherwise see a

psychiatrist or therapist. Plaintiff visited Dr. Elsen for office visits every six months for medication management. Plaintiff further stated that his employer "decided that they could not accommodate the restrictions that [plaintiff's] doctor gave *** to be able to return to work," and that he would "eventually" try to work somewhere else.

¶ 12    The employer's phone questionnaire indicated that plaintiff's employer was trying to "work[ ] with" plaintiff, but "he wasn't getting his work done" and "was not performing his regular job duties." The employer reported that there had been no changes to plaintiff's job title or duties, but that his work "had diminished."

¶ 13    IMRF specifically asked the employer by email whether it had considered implementing the recommendations from Dr. Elsen, and whether it was possible to implement those recommendations. Sheri Sochacki[1] responded that Evergreen Park High School had "made a concerted effort to support [plaintiff] to be successful in his job," and that

> "the director of facilities has previously implemented the recommendations from the doctor in an effort to help [plaintiff] stay on task and complete his assignments. [Plaintiff] was assigned to specific daily tasks in his designated area. Task/protocol/information cards in simple language were created specifically for [plaintiff]. These cards were posted in the custodian supply closet where [plaintiff] could easily review them. [Plaintiff] received individualized training on using newly introduced cleaning products and methods. Training was repeated when necessary."

---

[1] Sochacki's job title does not appear in the record on appeal. According to plaintiff, she is an executive secretary for Evergreen Park High School.

¶ 14    Plaintiff's medical documentation was reviewed by IMRF medical consultant, Dr. Stephen M. Gilman, who was asked to determine whether plaintiff met the IMRF definition for temporarily disabled, which provides, that a participating employee "shall be considered temporarily disabled" if "[h]e is unable to perform the duties of any position which might reasonably be assigned to him *** due to mental or physical disability caused by bodily injury or disease, other than as a result of self-inflicted injury or addiction to narcotic drugs." 40 ILCS 5/7-146(a)1 (West 2024).

¶ 15    Dr. Gilman submitted a report attesting that he was licensed and board certified in psychiatry, that he had at least five years of full-time equivalent experience "providing direct clinical care to patients," and that he had "the knowledge and clinical experience to render a determination for the case under review."

¶ 16    Dr. Gilman summarized the above timeline regarding plaintiff's medical history, and opined that plaintiff did not meet the IMRF definition for temporarily disabled. Dr. Gilman acknowledged that there was evidence to support plaintiff's "developmental delay" and "anxiety" diagnoses, but concluded that those findings did not "preclude the claimant from employment." Dr. Gilman explained that plaintiff had been employed in the same position for roughly 22 years, and that Dr. Thompson's psychological assessment indicated that he could "perform activities with a regular routine and straightforward communication." Dr. Gilman also noted that plaintiff had started medication for generalized anxiety, and that there was "no indication of any significant change in [plaintiff]'s level of functioning." To the contrary, there was "documented evidence of improvement in symptoms," as plaintiff's symptoms "attributed to anxiety" appeared to be "well managed with a medication regimen including sertraline." Dr. Gilman also noted that plaintiff had not reported needing any higher levels of care "beyond monthly prescriptions provided at the primary care level."

¶ 17    Dr. Gilman concluded that it had not been established that plaintiff's "physical ability is limited in any way." Regarding plaintiff's anxiety disorder, Dr. Gilman found plaintiff's condition to be "stable" with "improved symptoms attributed to anxiety based on the use of medication." Regarding his developmental delay diagnosis, Dr. Gilman found "no significant change in [plaintiff]'s clinical presentation based on the objective medical data."

¶ 18    On June 15, 2023, IMRF sent plaintiff a letter denying his claim for temporary disability benefits. IMRF explained that its "Medical Consultant reviewed your file" and, based on Dr. Gilman's recommendation, and IMRF's review of plaintiff's claim, "we have rendered an opinion that you should be able to perform the duties of any position which might be reasonably assigned to you by your IMRF employer." IMRF attached Dr. Gilman's report, and informed plaintiff that if he "believe[d] this decision is not correct, you or your attorney may request a hearing before the Board of Trustee's Benefit Review Committee" by submitting an enclosed form. Plaintiff was instructed that he "may present any witnesses or additional evidence" at the hearing, and that any additional medical evidence was required to be submitted before the hearing was scheduled.

¶ 19    Plaintiff submitted the form, which was received by IMRF on August 7, 2023. On plaintiff's form, he checked boxes indicating that he would "submit evidence at a later date," and that "other witnesses [would] appear at the hearing." Plaintiff, however, did not fill out the blanks providing the names of those witnesses.

¶ 20    At some point before the hearing, plaintiff submitted a document to IMRF entitled "hearsay objection," objecting to the introduction of three documents. First, Plaintiff objected to Dr. Gilman's report, stating that his opinions were "not made under oath under the pains and penalties of perjury," and that he did not properly opine on whether plaintiff was disabled because "it is for the Pension Board to determine whether the disability was caused by a covered act" and not a

doctor. Plaintiff also objected to the employer phone questionnaire, and the email from Sochacki. Plaintiff stated that these documents indicated that the responder used information from other individuals to answer the questions posed. Plaintiff requested that IMRF "[r]emove these documents from the record and its consideration," or "[t]ender the identified individuals so that their testimony may be obtained and [plaintiff] can cross examine them."

¶ 21    On May 30, 2024, the Benefit Review Committee held a hearing on plaintiff's appeal. The Committee noted that plaintiff appeared along with his attorney and his brother. Plaintiff and his brother both testified before the Committee, although a transcript or acceptable substitute of the hearing does not appear in the record on appeal. Following the hearing the Committee concluded,

> "[a]fter reviewing all the medical records in our files, it is the opinion of IMRF that [plaintiff]'s claimed conditions do not prevent him from being able to perform any duties reasonably assigned to him by his employer. Therefore, he cannot be considered eligible for [t]emporary disability benefits under article 7 of the Illinois Pension Code."

¶ 22    The Committee also noted that, although counsel for plaintiff raised a hearsay objection to materials in the administrative record, "the rules of evidence do not apply to hearings before the Committee," and the objection "may relate to the evidentiary weight to be given to the report" but "not its admissibility." The Committee found that plaintiff's medical condition was "not significant enough for him to be unable to perform any duties reasonably assigned by his employer," and that there was "no objective medical evidence to support that [plaintiff]'s medical condition/developmental disability prevented him from performing his custodian job duties." The Committee found no evidence of a "change in [plaintiff's] abilities or functioning due to his

medical condition between the period that he performed IMRF-participating work and the claimed date of disability."

¶ 23    The Committee specifically explained that plaintiff

> "had performed his job duties for over two (2) decades with the same employer, his job duties did not change, the employer implemented several work accommodations, his cognitive abilities did not change, and the only change was his new supervisor's job expectations. [Plaintiff] also testified that he has not sought employment and that he is currently taking care of his parents."

¶ 24    Based on "the testimony and evidence reviewed," the Committee concluded that plaintiff "had the ability to perform duties which could be reasonably assigned to him by his IMRF employer" and that plaintiff "does not meet IMRF's definition of temporary disability." Accordingly, the Committee recommended that the Board deny temporary disability benefits to plaintiff effective September 24, 2022.

¶ 25    The next day, on May 31, 2024, the Board held a hearing at which it voted to adopt the findings and conclusions of the Committee, thereby denying plaintiff's application for temporary disability benefits. IMRF sent plaintiff a letter informing him of the Board's decision on June 28, 2024.

¶ 26    Also on June 28, 2024, plaintiff submitted a motion to reconsider the denial of temporary disability benefits. In the motion, plaintiff's counsel stated that counsel received a phone call from IMRF on June 6, 2024, informing him that plaintiff's appeal had been denied and that a written determination would be forthcoming. Plaintiff asked that IMRF reconsider that decision because plaintiff had received notice on the previous day that his application for Social Security Disability Benefits had been approved.

¶ 27    On July 22, 2024, plaintiff filed a complaint for administrative review in the circuit court. Plaintiff amended that complaint on September 26, 2024, and filed a "brief in support" on November 20, 2024. Plaintiff challenged the "legality of" IMRF's denial of disability benefits, and argued that IMRF "violated his due process rights" when it admitted "Dr. Gilman's opinion, the Employer Phone Questionnaire and the email of Sheri Sochacki into the record over [plaintiff]'s hearsay objections." Plaintiff asserted that IMRF "erroneously allowed hearsay evidence into the record and relied upon said evidence in rendering its opinion, thereby violating Plaintiff's due process rights." Plaintiff further asserted IMRF denied his "request to depose Dr. Gilman in an effort to cure the hearsay objections." Plaintiff alleged that hearsay evidence must not be considered by an administrative agency, and that "any factual determination based on hearsay and unsupported by other competent evidence in the record must be reversed."

¶ 28    Plaintiff also complained that his motion to reconsider had been "ignored" by IMRF, "even though it was timely filed and IMRF still had jurisdiction over the matter." Plaintiff alleged that a motion to reconsider is timely as long as it is filed prior to service of the formal written decision. Plaintiff stated that his motion to reconsider had been submitted on June 28, 2024, at 6:11 a.m., and the final written decision had not been served until 2:22 p.m. that day, when IMRF placed it in the mail.

¶ 29    The Board filed its brief in support of its decision on December 23, 2024. The Board argued that the record contained "ample evidence that Plaintiff is able to perform duties that could be reasonably assigned to him by his employer" and that IMRF "did not violate Plaintiff's due process rights during the administrative proceedings."

¶ 30    The Board noted, in particular, that plaintiff had worked at the school district for over twenty years with the same psychological conditions, that plaintiff was not seeing a therapist, and

that plaintiff only saw his family medicine doctor every six months for medication management. The Board also noted that the employer reported that it had implemented the accommodations requested, but plaintiff continued to have difficulty completing his work. The Board also found that Dr. Gilman's opinion that plaintiff "could perform the duties of any position that may reasonably be assigned to him," was consistent with Dr. Thompson's opinion that plaintiff could perform the activities "with a regular routine and straightforward communication," and with the fact that plaintiff "had been performing in this position for over twenty years."

¶ 31    The Board also disputed plaintiff's argument that his due process rights were violated by the introduction of hearsay evidence. The Board noted that IMRF rules relaxing the rules of evidence applied equally to both parties, and that the informal procedures allow "disability appellants, many of whom go through the appeals process *pro se*, to submit documentation in support of their appeal without fear that the documents will later be excluded based on courtroom rules of evidence." The Board noted that plaintiff had also relied on hearsay evidence for his own positions.

¶ 32    Regarding plaintiff's claim that the Board "ignored" his motion to reconsider, the Board explained that a motion to reconsider is "not an available mechanism that is afforded to Plaintiff in Administrative Review Law, the Illinois Pension Code, or within IMRF's Board Resolutions." The Board further stated that once the Board made its decision to affirm the denial of plaintiff's temporary disability benefits, that decision was a "final administrative decision" and there was "no avenue *** for a motion to reconsider."

¶ 33    On February 27, 2025, the circuit court entered an order finding that the Board's decision was not clearly erroneous, that it was plaintiff's burden to demonstrate disability, and there was "[a]mple evidence" in the record to show that plaintiff was not temporarily disabled. The court

explained that plaintiff had "worked the same job duties for over 2 decades without apparent issue," and "his only claimed disabilities (generalized anxiety and cognitive/learning disability) did not change throughout this period."

¶ 34    The court also noted that "judicial rules of evidence do not strictly apply to administrative proceedings, which are instead governed by general principles of justice and fairness." The court was "not persuaded any injustice was done" during the administrative proceedings, when both parties presented evidence during the hearing which was "arguably hearsay and unfounded statements which might not be admissible if offered before this court," and plaintiff had been "granted an opportunity to argue all such evidence for and against his case." Finally, the court noted that, even if it disregarded all the evidence plaintiff contended "was inappropriately considered, other evidence in the record would still exist to support the decision such that it need not be reversed." Accordingly, the circuit court affirmed the final administrative decision.

¶ 35    Plaintiff filed a timely notice of appeal from that order.

¶ 36    When reviewing the decision of an administrative agency, this court reviews the agency's decision, not that of the circuit court. *Edwards v. Addison Fire Protection District Firefighter's Pension Fund*, 2013 IL App (2d) 121262, ¶ 31. The applicable standard of review depends on whether the issue is one of law, one of fact, or a mixed question of law and fact. *Beggs v. Board of Education of Murphysboro Community Unit School District No. 186*, 2016 IL 120236, ¶ 50. Questions of law are reviewed *de novo. Id.* An agency's factual determinations are considered *prima facie* true and are not to be reversed unless they are against the manifest weight of the evidence. *Id.* A finding is against the manifest weight of the evidence if the opposite conclusion is clearly evident. *Id.* Mixed questions of law and fact are not to be reversed unless they are clearly erroneous. *Id.* "An administrative decision is clearly erroneous 'when although there is evidence

to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " *Id.* (quoting *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 393 (2001)).

¶ 37    In this appeal, plaintiff does not challenge the Board's factual findings or its ultimate conclusion that he did not qualify as temporarily disabled. Plaintiff contends that there are "no issues of fact" and the only "issue before this Court is one of law and its applicability in this case." Specifically, plaintiff contends that his due process rights were violated when the Board considered hearsay evidence over his objection, and when the Board "ignored" his motion to reconsider.

¶ 38    "Whether a party's due process rights were violated during the administrative hearing is a question of law that we review *de novo*." *Kimble v. Illinois State Board of Education*, 2014 IL App (1st) 123436, ¶ 76. However, an administrative agency's decision regarding whether to admit evidence is reviewed for abuse of discretion. *McDonald v. Board of Trustees of Fire & Police Commissioners of Village of Maywood*, 2025 IL App (1st) 231616, ¶ 150 ("an agency's decision to admit [hearsay] evidence is discretionary and will not be disturbed absent an abuse of discretion."); *Logan v. Human Resources Board of the City of Chicago*, 2026 IL App (1st) 250003-U, ¶ 47 ("An administrative agency has discretion on what evidence to consider, and its decision on such matters will not be disturbed absent an abuse of that discretion."); *Alliance for the Greater Lakes v. Department of Natural Resources*, 2020 IL App (1st) 182587, ¶ 38 (quoting *Wilson v. Department of Professional Regulation*, 344 Ill. App. 3d 897, 907 (2003)) ("An administrative agency's decision 'regarding the conduct of its hearing and the introduction of evidence is properly governed by an abuse of discretion standard.' "). "An abuse of discretion occurs only when no reasonable person would take the view adopted by the court." *In re Marriage of Levinson*, 2013

IL App (1st) 121696, ¶ 34. Under any standard of review, the plaintiff bears the burden of proof. *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 532 (2006).

¶ 39     "[A]n administrative proceeding is governed by the fundamental principles and requirements of due process of law. However, due process is a flexible concept and requires only such procedural protections as fundamental principles of justice and the particular situation demand." *Abrahamson v. Illinois Department of Professional Regulation,* 153 Ill. 2d 76, 92 (1992). " An administrative hearing comports with due process where the parties are given the opportunity to be heard, the right to cross-examine adverse witnesses, and an impartial ruling based on the evidence." *Gonzalez v. Pollution Control Board,* 2011 IL App (1st) 093021, ¶ 42.

¶ 40     "[P]rocedural due process in an administrative proceeding does not require a proceeding in the nature of a judicial proceeding." *Abrahamson,* 153 Ill. 2d at 92–93.  Rather, "[d]ue process requirements differ in judicial and administrative proceedings because administrative proceedings are simpler and less formal and technical than judicial proceedings." *Daniels v. Police Board of the City of Chicago*, 338 Ill. App. 3d 851, 860 (2003). "In administrative proceedings, the formal procedures of a trial are not required; instead, 'due process is satisfied by a procedure that is suitable for the nature of the determination to be made and conforms to the fundamental principles of justice.' " *Alan Josephsen Co. Inc. v. Village of Mundelein*, 2024 IL App (1st) 230641, ¶ 24, quoting *Desai v. Metropolitan Sanitary District of Greater Chicago*, 125 Ill. App. 3d 1031, 1033 (1984).

¶ 41     On administrative review, a reviewing court "has a duty to examine the procedural methods employed at the administrative hearing, to insure that a fair and impartial procedure was used." *Abrahamson,* 153 Ill. 2d at 92–93.  "If the procedures used by an administrative agency violate fundamental fairness and a party's due process rights, the appellate court should reverse the

agency's decision." *Hearne v. Chicago School Reform Board of Trustees of the Board of Education,* 322 Ill. App. 3d 467, 484 (2001) (citing *Dimensions Medical Center, Ltd. v. Elmhurst Outpatient Surgery Center, L.L.C.,* 307 Ill. App. 3d 781, 795 (1999)); *Kimble,* 2014 IL App (1st) 123436, ¶ 78.

¶ 42    Plaintiff first contends that the Board violated his due process rights by considering three pieces of evidence, which plaintiff contends were inadmissible hearsay—Dr. Gilman's report, the employer phone questionnaire, and the email from Sochacki.

¶ 43    This court has repeatedly instructed that "the strict rules of evidence that apply in a judicial proceeding are not applicable to proceedings before an administrative agency." *Kimble*, 2014 IL App (1st) 123436, ¶ 79; see also *Wagner v. Board of Education of North Shore School District 112*, 2023 IL App (2d) 220453, ¶ 39. Although the Administrative Procedure Act provides that an agency should generally follow the rules of evidence applicable in civil cases in circuit court, it also permits the admission of other evidence which would not otherwise be admissible under the rules of evidence, so long as it is "of a type commonly relied upon by reasonably prudent men in the conduct of their affairs." See 5 ILCS 100/10-40 (West 2024) ("Evidence not admissible under those rules of evidence may be admitted, however, (except where precluded by statute) if it is of a type commonly relied upon by reasonably prudent men in the conduct of their affairs.").

¶ 44    Additionally, Administrative Review Law provides that technical errors in administrative proceedings or the agency's failure to observe technical rules of evidence are insufficient to reverse a decision "unless it appears to the court that such error or failure materially affected the rights of any party and resulted in substantial injustice." 735 ILCS 5/3-111(b) (West 2024). " '[W]here there is sufficient competent evidence to support an administrative decision, the improper admission of hearsay testimony in the administrative proceeding is not prejudicial error.' " *Abrahamson*, 153

Ill. 2d at 94 (quoting *Goranson v. Department of Registration & Education*, 92 Ill. App. 3d 496, 501 (1980)).

¶ 45    Moreover, "administrative agencies are creatures of statute, and, as such, the legislature may define or alter the rules of evidence applicable to an agency's proceedings." *Jankovich v. Illinois State Police*, 2017 IL App (1st) 160706, ¶ 54 (internal citation omitted). Here, the legislature has explicitly entrusted IMRF to "establish such rules and regulations not inconsistent with the other provisions of this Article as are necessary or desirable for the efficient administration of the fund," (40 ILCS5/7-198 (West 2024)) and the rules enacted by IMRF provide that hearings "shall be informal," "the rules of evidence shall not apply," and "[a]ny part of the evidence may be received in written form."

¶ 46    Plaintiff does not provide any argument regarding why the evidence to which he objected would not qualify for admission as "a type commonly relied upon by reasonably prudent men in the conduct of their affairs." 5 ILCS 100/10-40 (West 2024). He also acknowledges the above IMRF rules, but contends that permitting hearsay that would otherwise be inadmissible under the general rules of evidence is "contrary to law" and evidences IMRF's "continued erroneous approach to how they conduct hearings." Plaintiff asserts that IMRF's procedures allowing hearsay "violate fundamental fairness" and his due process rights, because he was "den[ied] *** the opportunity to cross-examine Dr. Gilman" and was thus "unable to fully develop the record and have a meaningful opportunity to defend himself." In particular, plaintiff contends that he was not allowed to depose or cross-examine Dr. Gilman regarding the fact that he never met or interviewed plaintiff, he "merely read some records and rendered an opinion."

¶ 47    Initially, IMRF disagrees with plaintiff's contention that it did not "allow" plaintiff to conduct a deposition of Dr. Gilman, or to cross-examine him. IMRF asserts that plaintiff did not

request a deposition, or ask to call Dr. Gilman as a witness. In reply, plaintiff does not dispute that he did not subpoena or call Dr. Gilman to testify, but contends that "if the rules of evidence do not apply," he did not have "authority" to call someone as a witness.

¶ 48    We agree with IMRF that the record does not support plaintiff's claim that he was denied the opportunity to depose Dr. Gilman or call him at the hearing. We also find plaintiff's contention that he was powerless to call witnesses unpersuasive. The record shows that plaintiff was informed by IMRF that he "may present any witnesses or additional evidence" at the hearing, but plaintiff failed to list any witnesses. In these circumstances, we could find plaintiff's claim forfeited.  See *Yunez v. Illinois Department of Children & Family Services*, 2024 IL App (1st) 230614-U, ¶ 49 (finding that the plaintiff forfeited any claim that he was denied the opportunity to cross-examine witnesses when he failed to request that they be called as witnesses. "When it became apparent that [the agency] was going to rely on P.S.'s and C.S.'s forensic interviews, rather than call them in person as witnesses, [the plaintiff] could have called them as witnesses during his case-in-chief.").

¶ 49    Nonetheless, we do not find that the procedure used by IMRF violated plaintiff's due process rights or fundamental fairness. As stated above, agency proceedings are not required to be "in the nature of a judicial proceeding," nor are agencies required to strictly observe the rules of evidence. *Abrahamson,* 153 Ill. 2d at 92–93. Here, the IMRF rules allow both parties to participate in "informal" proceedings in which the rules of evidence do "not apply," and evidence may be submitted "in written form." Plaintiff benefitted from those rules, as he was able to submit his own evidence, including written medical records from Dr. Elsen and Dr. Thompson, without requiring them to testify at the hearing. Additionally, the record shows that plaintiff was able to make any arguments he wanted regarding the weight that should be given to the various evidence, including

that Dr. Gilman's opinion should be discounted because he never met plaintiff.

¶ 50    Moreover, even if we were to find that IMRF erroneously admitted hearsay testimony, such errors are insufficient to reverse a decision "unless it appears to the court that such error or failure materially affected the rights of any party and resulted in substantial injustice." 735 ILCS 5/3-111(b) (West 2024); see also *Abrahamson*, 153 Ill. 2d at 94 ("where there is sufficient competent evidence to support an administrative decision, the improper admission of hearsay testimony *** is not prejudicial error" (internal quotation marks omitted)).

¶ 51    Even if all of the evidence plaintiff objected to had been excluded, the record would still support the Board's finding that plaintiff was not temporarily disabled. The medical records from plaintiff's doctors, Dr. Elsen and Dr. Thompson, suggest that plaintiff has had the same medical conditions since childhood, that he had previously been successful in the same role despite those conditions for over twenty years, and that he could continue to be successful with "regular routine and straightforward communication." Those medical records also show that plaintiff's anxiety symptoms quickly improved, and his condition became "stable," after starting medication. Plaintiff's questionnaire also indicated that he did not see a psychiatrist and only required twice yearly medical appointments with his family medicine doctor for medication management. Because the record contains other competent evidence supporting the Board's determination, we cannot find that plaintiff's due process rights were violated, even if hearsay evidence was admitted improperly.

¶ 52    Plaintiff next contends that IMRF violated his due process rights by "ignor[ing]" his motion to reconsider in which he asked the Board to reconsider its denial in light of this new evidence that he had been awarded social security benefits.

¶ 53    IMRF responds that the final administrative decision occurred on May 31, 2024, when the

17

Board voted to deny temporary disability benefits. Under IMRF rules, that decision is final, and "[t]here is no avenue provided for in this resolution which would allow the Board to hear a motion to reconsider."

¶ 54   Plaintiff replies that his motion to reconsider was "timely filed" because he submitted it before the final written decision was served on him. He acknowledges that the Board made its decision to affirm the previous denial of temporary disability benefits on May 31, 2024, and that he was actually notified of that decision on June 6, 2024. Plaintiff, however, contends that the Board continued to have jurisdiction to entertain a motion to reconsider the denial of his temporary disability benefits until the final administrative decision was formally served.

¶ 55   Initially we note that in plaintiff's entire argument section on this issue, plaintiff cites a statute and two cases, one of which is an unpublished decision from 2012, which this court will not consider. See Ill. S. Ct. R. 23 (eff. June 3, 2025) (unpublished order issued prior to January 1, 2021, "is not precedent"). The only other case is cited for the general purpose of a motion to reconsider, however, plaintiff cites no authority suggesting that due process requires a plaintiff to be allowed to file such a motion in an administrative proceeding.

¶ 56   As previously stated, "administrative agencies are creatures of statute." *Jankovich*, 2017 IL App (1st) 160706, ¶ 54. An administrative agency " 'obtains its power to act from the legislation creating it and its power is strictly confined to that granted in its enabling statute.' " *Schwartz v. Illinois Human Rights Commission*, 2024 IL App (4th) 231248, ¶ 92, quoting *Gilchrist v. Human Rights Commission*, 312 Ill. App. 3d 597, 601 (2000).

¶ 57   Administrative Review Law defines an administrative decision as "any decision, order or determination of any administrative agency rendered in a particular case, which affects the legal rights, duties or privileges of parties and which terminates the proceedings before the

18

administrative agency." 735 ILCS 5/3-101 (West 2024). Administrative review law further provides that if "a statute or a rule of the administrative agency requires or permits an application for a rehearing or other method of administrative review to be filed within a specified time," and such an "application for such rehearing or review is made," then the administrative decision will not be final until after "such rehearing or review is had or denied." 735 ILCS 5/3-101 (West 2024).

¶ 58    In this case, the applicable IMRF rules do not include any provision which allows a plaintiff to file a motion to reconsider from the Board's decision. To the contrary, those rules provide that a "decision of the Board of Trustees either affirming or reversing the determination of the administrative staff shall be a final administrative decision for purposes of review under the Illinois Administrative Review Act." This language clarifies that the Board's decision is final at the time it is made, and that rehearing is not available. In these circumstances, we conclude that the Board did not have the authority to reconsider its final administrative decision, and that it did not err in failing to do so. See *LVNV Funding, LLC v. Trice*, 2015 IL 116129, ¶ 31 ( "An administrative agency *** is a purely statutory creature and is powerless to act unless statutory authority exists.").

¶ 59    Apparently recognizing that IMRF rules do not provide for a motion to reconsider from the final administrative decision, plaintiff contends that his motion to reconsider was "timely filed" because the Board's decision was not final until it was served on him. Plaintiff cites a statute entitled "Commencement of action," which outlines the procedure of how to commence an action after a final administrative decision by "by the filing of a complaint and the issuance of summons within 35 days from the date that a copy of the decision sought to be reviewed was served upon the party affected by the decision." 735 ILCS 5/3-103 (West 2024). This statute, however, concerns the timeline for filing a complaint for administrative review, and it does not suggest that administrative decisions are only made final by formal service.

¶ 60    Finally, even if notice to plaintiff were required, the record shows that the Board made its final administrative May 31, 2024, and plaintiff was notified of that decision on June 6, 2024. Indeed, plaintiff was clearly aware that the Board had made its final administrative decision, as he asked the Board to "reconsider" it. In these circumstances, we find no due process violation in the Board's failure to entertain his motion to reconsider.

¶ 61    For the foregoing reasons, we find that plaintiff has failed to demonstrate that he was denied due process throughout the administrative process. Accordingly, we affirm the judgment of the circuit court upholding the Board's decision to deny plaintiff temporary disability benefits.

¶ 62    Affirmed.